UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL LYNCH,<br>    Plaintiff,<br><br>vs.<br><br>DR. EK, Medical Director; JULIE MACKIE, Hill Infirmary Nurse; JASON GARZA, Grievance Officer; SARA JOHNSON, Administrative Review Board, ROB JEFFREYS, Director; WEXFORD HEALTH SOURCES, INC., A Florida Corporation,<br>    Defendant's | Case No.<br><br>JURY DEMAND<br><br>VERIFIED COMPLAINT |

## COMPLAINT

Plaintiff, Michael, pro se, brings this civil rights action under 42 U.S.C. 1983 to obtain relief for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution by the deliberate indifference by employees or agents of the Illinois Department of Corrections (IDOC) to his serious medical needs. Plaintiff also brings a claim for state law tort actions of intentional tort, medical battery, and negligence/malpractice under Illinois law.

## FEDERAL JURISDICTION AND VENUE

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as a matter arising under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution and under 28. U.S.C. § 1343(a)(3) as a civil action authorized by law to redress the deprivations under color of state law of Plaintiffs rights. This court has jurisdiction under 28 U.S.C. § 1367 as to related claim in this action for supplemental jurisdiction.

## PARTIES

3. Plaintiff, Michael Lynch, is an individual residing in the state of Illinois at all times relevant to this action. Plaintiff resides at Hill Correctional Center (Hill), P.O. Box 1700, Galesburg, Illinois 61402, during all times relevant to this complaint.

4. Defendant, Ek, is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC (through Defendant Wexford) as Medical Director for Hill Health Care Unit, and was acting in that capacity under color of the laws of the state of Illinois. This action is brought against Defendant Ek in his Individual capacities.[1]

5. Defendant Julie Mackie, is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC (through Defendant Wexford) as the prison infirmary unit attending nurse in the Health Care Unit and was acting in that capacity under color of the laws of the state of Illinois. This action is brought against Defendant Mackie in her individual capacity.[2]

6. Defendant Jason Garcia, is an individual who, during all time relevant to the facts alleged in this complaint, was employed by the IDOC as a grievance officer for Hill and was acting in that capacity under color of the laws of the state of Illinois. This action is brough against Defendant Garcia in his individual capacity.[3]

7. Defendant, Sara Johnson, is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC to review prisoners appealed grievances, and was acting under color of the laws of the the state of Illinois. This action is brought against Defendant Johnson in her individual capacity. [4]

8. Defendant Rob Jeffreys, is an individual who, during all times relevant to the facts alleged in this complaint, was employed as Director of Corrections for the IDOC and was acting in that capacity under color of the laws of the state of Illinois. This action is brought against Defendant Jeffreys in his

---

Foot Notes 1, 2, & 3    These Defendant's each work at Hill at 1327 S. Linwood Road, Galesburg, Illinois 61401

4.    Defendant Johnson work for IDOC, 1301 Concordia Court, Springfield, Illinois 62794

in his individual capacity. [5]

9. Defendant, Wexford Health Sources, Inc.,(Wexford) is a Florida Corporation, which on information and belief, during all times relevant to the facts alleged in this complaint was a party to a contract with the IDOC to provide health care services to offenders at Hill and other IDOC facilities. On information and belief during all times relevant to the facts alleged in this complaint, Defendant Wexford employed Defendant's Ek and Mackie. This action is brought against Defendant Wexford in its individual and official capacities.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff Lynch timely filed the appropriate grievances and exhausted his administrative remedies to the final level. The Administrative Review Board denied his August 2019 grievance (#19-08-347) and his September 2019 grievance (#19-09-098).[6] However, in its #09-09-098 denial the administrative review board concluded it could not determine claims of staff misconduct regarding Defendant Mackie causing Plaintiffs injury based on medical documentation. [See Grievance Grop Exhibits A1, and A2, respectively.]

### FACTUAL ALLEGATIONS

11. Plaintiff Lynch assert that each Defendant denied him substantial rights and protections in violation of the Eighth and Fourteenth Amendmants of Federal and State Constitutions and State Law Intentional Torts of Negligence/Malpractice and a claim of Medical Battery.

12. The Eighth Amendment violation Plaintiff Lynch complains of is manifest through Defendant Ek's discrimination and deliberate indifference to Plaintiffs serious medical needs, and through negligence and malpractice.

13. The Eighth Amendment violation, as well as the medical battery Plaintiff Lynch complains of is also manifest through Defendant Mackie's deliberate indifference to Plaintiffs serious medical needs wherein she committed a medical battery upon the person of the Plaintiff.

---

5. Defendant Jeffreys is employed at 1301 Concordia Court, Springfield, Illinois 62794.
6. Subsequent to his last surgery Plaintiff believed he would be in the infir-

14. Federal and State Law require that IDOC medical staff provide reasonable medical care to prison offender's under their care.

15. The Fourteenth Amendment violation Plaintiff complains of is manifest through Defendant's Garcia, Johnson, and Jeffreys refusal to properly investigate, through the grievance process, to reveal the name of the Health Care Unit Porter that Defendant Mackie used to lift Plaintiff from the wheel chair on to the bed and who witnessed the medical battery inflicted unpon Plaintiff by Defandant Mackie, thus precluding Plaintiff from establishing the facts leading to his injury by Defendant Mackie. [See Exhibit, A2, Hereto Attached]

16. On June 24, 2019, Plaintiff, Michael Lynch, was take to Cottage Hospital, in Galesburg Illinois, for major surgery for a total right hip replacement.

17. Following the successful surgery Plaintiff was medicall required to convales in a hospital style bed, raised to about the height of Plaintiffs hip, to meet his medical needs to preclude injury to the surgical area when entering and exiting the bed.

18. Prior to being discharged from Cottage Hospital Plaintiffs surgeon, Dr. Gregory Schirer, enetered his room accompanied by 2 Physical Therapists. Each explained to Plaintiff what he was medical restricted from doing in relation to his right leg and hip; to the extent of how he should and should not move or position his leg, called Total Hip Precautions. [See Exhibit B, Hereto Attached] These precautions included verbal explainations by each physical therapist on how to get into and out of bed (presumed to be based on the height of the bed Plaintiff was in at Cottage Hospital). The precautions are to avoid hip dislocation.

20. Plaintiff Lynch was subsequently discharged from Cottage Hospital and returned to Hill Health Care Unit infirmary where he had previously been informed by Defendant Ek and Nurse Practitioner Steele that he would be inside the prisons infirmary for 6 to 8 weeks.

21. Plaintiff Lynch' final question to his surgeon, Dr. Schirer, before leav- the community hospital was how long would it take for his hip to heal entirely.

---

mary for short period period of time since he was initially discharged within 2 weeks and did not want to file his grievance-out of fear-while in the infirmary believing nurse Mackie would retaliate against him. As the deadline for filing the grievance drew near and still in the infirmary, Plaintiff filed his grievance.

Dr. Schirer responded that it would take 6 months to 1-year for his hip to heal completely. Plaintiff was thereafter discharged from the community hospital and returned to the prison June 27, 2019.

22. Upon returing to the prisons infirmary Plaintiff was provided the same type of hospital bed (Hill-Rom) that he recovered in at Cottage Hospital, which was capable of being raised electronically to a desired height for his medical needs for entering and exiting the bed without impeding the the medical precautions prescribed by his surgeon and physical therapists.[7]

23. Fourteen days following the hip surgery Defendant Ek enter Plaintiffs room and informed him that he was discharging him. Plaintiff Lynch responded to Defendant Ek that it appeared to be a bit early for discharge based on what he and the nurse practitioner had earlier informed him; and that other inmates with hip replacement surgies had been in the infirmary for 6 to 8 weeks recovery time.

24. Defendant Ek responded to Plaintiff that he would be okay.

25. After Plaintiff had gathered his belongings Defendant Ek wrote a permit for Plaintiff to use a walker and cane to get around.

26. Plaintiff was assigned to live in Unit R1-C, cell 25. The beds in the population living units are substantially different from the beds inside the infirmary, in that the height of the bed he was assigned stood about precisely below the bend of Plaintiffs knee and had no side railing to prevent Plaintiff from falling out of bed. The Hospital and Infirmary beds has side rails also.

27. Approximately forty-five minutes after arriving to his cell Plaintiff decided to lay down. Over a period of 15 to 20 seconds Plaintiff was able to lower himself onto the bed. However, when Plaintiff attempted to get out of the bed his right hip dislocated causing him to scream out in pain. Several inmates heard Plaintiff scream and began yelling to get the staff to provide Plaintiff medical assistance.

28. Plaintiff was subsequently removed from his cell by stretcher to an emergency vehicle outside of R1 living unit and transported to the prison in-

---

[7] Hill infirmary has 4 Hill-Rom hospital style bed and 11 standard population style beds.

firmary and orally administered 100 mg of Norco for pain.

29. Approximately 20 minutes later a city ambulance arrived to transport Plaintiff to Cottage Hospital Emergency Room. The onboard ambulance Technician assessed Plaintiffs pain and was administered an injection of morphine.

30. Within minutes of taking the morphine and observing that Plaintiff was still in agony, the onbnard technician radioed to Cottage Hospital with his assessment of Plaintiffs condition and south authorization to administered more pain medication. Authorization was approved and Plaintiff was administered an injection of fentanayl.

31. Upon arriving to the emergency room at Cottage Hospital, Plaintiff was visably in pain and the emergency room nurse administer a fourth round of unknown medication to manage his level of pain.

32. Subsequent to diagnostic imaging it was affirmed that Plaintiff had experienced and was suffering from a dislocated hip. Plaintiff remained in cisable agony and a pain specialist was summoned by the emergency room nurse.

33. After assessing Plaintiffs condition and pain the specialist stated he would prepare something that would stop the pain.

34. The fifth pain management attempt was effective and Plaintiff was then prepared for anestheiology, followed by the procedure to relocate his right hip.

35. When Plaintiff regained consciousness he realized that he was being lifted into the transport van by two corrections officers and the emergency room nurse, who, nurse Leola asked Plaintiff if he was okay and Plaintiff stated he was okay.

36. Still under the effects of the pain medications and anesthesia, Plaintiff lost consciousness and awakened to being removed from the transport van in front of the prisons administration building where a wheel chair was waiting.

37. One of the transport officers pushed Plaintiff to the prisons infirmary and turned over care and custody of Plaintiff to the head nurse at the infirmary.[8]

---

8. At the time Plaintiff did not know the name of the head nurse and requested in a grievance that he be provided the name of the infirmary nurse.

38. Defendant Mackie took control of Plaintiffs wheel chair and pushed him to the ward he was assigned to, A ward, bed 1.

39. Defendant Mackie rolled Plaintiff up to the side of bed 1 in A, ward and instructed Plaintiff to get up and get into bed.

40. Plaintiff Lynch shifted his body and told Defendant Mackie he could not get up; that he came straight from surgery in to the transport van without any recovery time.. That he was still under the effects of the medication and could not force himself to stand.[9]

41. Defendant Mackie told Plaintiff he could get into his bed unassisted and stared at Plaintiff angerly.

42. After it appeared that Plaintiff was not getting up on his own, Defendant Mackie summoned an inmate porter to assist her getting Plaintiff into bed, where Defendant Mackie and the porter stood Plaintiff and leaned Plaintiff against the bed while the porter went to the other side of the bed to pull Plaintiff into the bed.

43. Once Plaintiff was laid into the bed with his right leg hanging off the side of the bed, Defendant Mackie grabbed the right pant leg and jerked Plaintiffs leg upward and into the bed.

44. Plaintiff heard a pop sound and simultaneously screamed out in pain.

45. Defendant Mackie immediately began apologizing and asking Plaintiff Lynch to please not say that she caused the dislogation to his right hip, that she could not aford to lose her job. In that moment Plaintiff began vomiting uncontrolbly all over the bed.

46. At that moment the Physicians assistant entered the room inquiring what was going on, to which Defendant Mackie responded that Plaintiff told her that his right hip dislocated inside the transport van.

47. During that time Plaintiff was in the throws of dry heaving, unable to respond.

48. The inmate porter who assisted Defendant Mackie looked in my direction

---

[9] The traveling time from Cottage Hospital to Hill Correctional Center is from approximately 8 to 10 minutes.

in appearant obvious disbelief of her response to the Physician Assistant, shook his head and left the room.

49. For the second time that same day and ambulance was called to transport Plaintiff to Cottage Hospital Emergency Rooom where it had been determined after hours of trying to relocate Plaintffs right hip that relocation that relocation could not be successfully accomplished; and Plaintiff was scheduled for evasive surgery for the following morning and he was admitted into Cottage Hospital for surgery.[10]

50. Plaintiffs surgery was completed on July 12, 2019 and on July 13, 2019 he was told by his surgeon, Dr. Gregory Schirer, that because of the previous dislocations to his right hip that the only way to successfully relocate his right hip was to lengthen his right leg by an inch to a quarter inch in a half and that he would require a specialized left shoe to compensate for the height difference or a shoe lift to avoid the risk of falls.

51. Subsequent to the last surgery Plaintiff requested Defendant Ek to order him a shoe lift, and requested a shower chair to avoid falling in the shower. Defendant Ek wrote Plaintiff an order for a shower chair. See Exhibit C, Hereto Attached.

52. Since the bmedical battery committed upon Plaintiff by Defendant Mackie Plaintiff Lynch continue being in pain in his right hip when walking and has since been issued a wheel chair for distance. See Exhibit D, Hereto Attached.

53. In Plaintiffs grievance in addition to requesting the name of the on duty infirmary nurse who caused the injury to his hip, he also requested the name of the inmate porter who assisted Defendant Mackie getting Plaintiff into bed and who witnessed her intentionally causing harm to Plaintiffs right hip.

54. Neither Defendant's Garcia, Johnson or Jeffreys acknowledged Plaintiffs request for the names in their investigation or disposition of the grievance.

---

10. Plaintiff only learned of the unsuccessful attempt to relocate his hip and the need for an envasive surgery after awaking around 2:00 AM in a private hospital room still at Cottage Hospital.

CAUSE OF ACTION

FIRST CAUSE OF ACTION

WITHHOLDING OF REQUIRED REASONABLE MEDICAL CARE
FOR RECOVERY AFTER SURGERY AND DELIBERATE INDIFFERENCE
Defendant's Ek and Wexford

55. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 54, inclusive, as if fully set forth herein.

56. As previously alleged, Defendants displayed deliberate indifference to Plaintiffs serious medical needs by their failure to provide Plaintiff the appropriate aftercare following his serious surgical procedure, in that he was not afforded a reasonable time for recovery in the prisons infirmary, where Plaintiff Lynch would have a bed to meets the needs of his medical condition to preclude injury to his right hip.

57. Defendant's were, or should have been, medically aware of the exact length of time needed inside the prisons infirmary to facilitate Plaintiffs recovery.

58. Defendant's were, or should have been, aware of the height difference between the beds in the prison population and the infirmary, and that the beds in the prison population would cause Plaintiff to break the prescribed pre cautions.

59. The failure of the Defendants to provide Plaintiff with the necessary and appropriate aftercare devices, (i.e., bed of a certain height) to assist in his recovery of his serious medical condition constitutes releckless disregard for Plaintiffs serious medical need.

60. The above stated actions and omissions of the Defendants were done under color of state law, and by their malpractice and deliberate indifference to Plaintiffs serious medical needs; these Defendants willfully violated Plaintiffs rights under the Eighth and Fourteenth Amendments to the united States and Illinois Constitutions.

61. The actions of the Defendants and their failure to provide Plaintiff

9.

reasonable medical care is the proximate cause of Plaintiffs injury of his right hip dislocating.

62. Plaintiffs condition relative to his right hip has severely worsened requiring corteson injections to manage pain as a resuly of the Defendants. Plaintiff remains in continuous pains in his right impeding his ability to have a normal quality of life. Plaintiff cannot bear his body weight on his right side without a great deal of pain and must utilize a wheel chair to travel distances grreater than 100 yards; See Exhibit E, Hereto Attached and a cane to support his weight on his right side, as well as to prevent falls. And must utilize a shower chair when showering to avoid falls. See Exhibit F, Hereto Attached.

## SECOND CAUSE OF ACTION

### NEGLIGENCE AND/OR MALPRACTICE FOR THE FAILURE TO PROVIDE APPROPRIATE MEDICAL CARE TO SUPPORT THE NEEDS OF PLAINTIFFS RECOVERY
### Defendant Ek

63. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 54, inclusive, as if fully set for herein.

64. As previously alleged, Defendant Ek had a duty to provide Plaintiff an appropriate level of medical care sufficient to meet the needs of his re-covery; thereby keeping Plaintiff assigned to the prisons infirmary with a bed sufficient to preclude him from breaking his medical precautions, until he no longer required a specialized hospital bed raised to a certain height.

65. Defendant Ek knew or should have known that the beds inside popula-tion cell houses were insufficient to meet the needs of a pati ent just 14 days out of a total hip replacement surgery, and should have been aware that the cell house beds were at a maximum 14 inches high from the floor and that for Plaintiff to either sit, get in or out of the cell house bed would certainly cause him to bend his body more than a 45 degree angle and would break the prescribed pre-cautions issued him by his surgeon, Dr. Gregory Schierer and both Physical Therapists and would cause greater injury to his medical condition.

66. Defendant Ek was aware that recovery time for a total hip replacement surgery was greater than the two weeks Plaintiff was allowed to be in the prisons

infirmary, particularly in the case of Plaiintiff who is an elderly person. Whereas, Defendant Ek told Plaintiff prior to his surgery that he would be in the infirmary for a while and that he should bring all his property to the infirmary.

67. Defendant Ek did not perform any examination of Plaintiff the morning he entered Plaintiffs room and informed him he was being discharged. Defendant Ek did not so much as determine if Plaintiff could appropriate bear beight on his right side until Plaintiff mentioned to Defendant that he was having difficulty standing and walking.

68. Defendant Ek has kept other offender's, who were recoveriing from a total hip replacement surgery, in the prison infirmary for months at atime.

69. Defendant Ek' failure to provide Plaintiff the ordinary standard of medical care is the proximate cause of plaintiffs injuries to his right hip causing him pain and suffering and rises to the level of malpractice, negligence, and deliberate indifference.

THIRD CAUSE OF ACTION:

MEDICAL BATTERY, DELIBERATE INDIFFERENCE, AND NEGLIGENCE TO PLAINTIFFS SERIOUS MEDICAL CONDITION CAUSED HIM TO NOW HAVE SPECIAL NEEDS
Defendant Mackie

70. Plaintiff repeat and re-alleges the allegation of paragraph 1 through 54, inclusive, as if fully set forth herein.

71. Defendant Mackie had a duty to provide Plaintiff Lynch with reasonable medical care free of malice or malicious intent; whereas, Defendant Mackie had actual knowledge of Plaintiffs medical condition and of what was required to prevent further harm to Plaintiff due to his medical condition.

Defendant Julie Mackie actied maliciously toward Plaintiff Lynch inspite of her actual knowledge of a substantial risk of serious harm when she intentionally and forcefully jerked Plaintiffs right pant leg cuff flinging my leg into the direction of the bed, causing my right hip to, again dislocate within 20 minutes of having had it surgically relocated prior to her malicious act of medical battery.

73. Defendant Mackie's act of lieing to the Physician Practioner, Nurse

11.

Steele, who asked what was going on, when she entered the room after hearing Plaintiff scream out in pain, was an act to cover-up the medical battery she committed upon the person of Plaintiff Lynch. Defendant Mackie failed to realize that the institution surveilence camera's between the Administration Building, Health Care Unit Entrance, and the Infirmary would indicate that Plaintiff did not appear to have any injury to his hip consistent with the pain he was experiencing when both ambulance technicians entered his infirmary bed room and removed him to the ambulance in front of the Health Care Unit.

74. Defendant Mackie lied on IDOC coworkers to avoid responsibility for the medical battery she committed against Plaintiff Lynch.

75. The actions of Defendant Mackie is the proximate cause that Plaintiff has to use a cane, wheel chair, and shower chair inspite of the surgery that caused Plaintiffs right leg to have to be lengthened by 1 abd ½ inches and the need for Plaintiff to require a specialized shoe lift. See Exhibit's C, D, E, and F, Hereto Attached.

### FOURTH CAUSE OF ACTION:

PLAINTIEF RIGHT TO DUE PROCESS WAS DENIED BY THE DEFENDANT'S
WHEN THEY WILLFULLY REFUSED TO IDENTIFY THE INMATE PORTER WHO WAS IN THE ROOM
Defendant's Garcia, Johnson, and Jeffreys

76. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 54, inclusive, as if fulle set forth herein.

77. As previously alleged, during the course of the medical battery committed on the person of Plaintiff Lynch, by Defendant Mackie there was an unnamed witness to the battery, an inmate porter who was reassigned following Plaintiffs injury.

78. In his grievance Plaintiff requested that the grievan officer's provide the names of the person who committed the battery on him and the name of the witness who was in the room and observed the injury against Plaintiff.

79. The grievence officer's, at neither levels, provided the names requested by the Plaintiff.

80. Plaintiff has since been able to discover the name of the perpatrator

Julie Mackie, who caused his injury, but not the name of the eye witness who was present in the room during the acts occurance, as the eye witness was removed from working in the prisons infirmary to another work assignment.

81. The failure to provide the information when requested by the Plaintiff in his grievance was a denial of due process, and upon Plaintiffs belief was an effort to preclude Plaintiff from ever moving forward with litigation in this matter by Defendants, Garcia, Johnson, and Jeffreys.

### RELIEF

### I. ISSUE AN ORDER THAT:

A. The Defendant's Garcia, Johnson, and Jeffreys provide Plaintiff the name and location of the eye witness, inmate, who was present when Plaintiff was assaulted by Defent Mackie for purposes of discovery.

### II. AWARD DAMAGES IN THE FOLLOWING AMOUNTS:

B: **COMPENSATORY DAMAGES**

a) $150,000 jointly and severally against Defendant Ek.
b) $300,000 jointly and severally against Defendant Mackie.
c) $60,000 jointly and severally against Defendant Garcia.
d) $60,000 jointly and severally against Defendant Johnson.
e) $60,000 jointly and severally against Defendant Jeffreys.
f) $60,000 jointly and severally against Defendant Wexford.

C. **PUNATIVE DAMAGES**:

a) $500,000 each against Defendant's Ek and Mackie.
b) $90,000 each against Defendant's Garcia, Johnson, and, Jeffreys.
c) $90,000 each against Defendant Wexford.

D. GRAND SUCH OTHER RELIEF AS IT MAY APPEAR THAT THE PLAINTIFF IS ENTITLED TO.

13.

      Plaintiff request a trial by jury on all claims put forth in his Complaint so triable.

Signed and sworn to before me this \_\_\_\_\_ day of June 2021

Michael Lynch, pro se
Reg. No. A-15561
Hill Corr. Cntr.
P.O. Box 1700
Galesburg, Illinois 61402

NOTARY PUBLIC

14.

## VERIFICATION DECLARATION

Pursuant to 28 U.S.C. § 1746, I, Michael Lynch, declare under penalty of purjury that the foregoing facts stated in the attached § 1983 Complaint are true and correct, except as to matters therein stated to be upon belief, and as to such matters Plaintiff verily state to be true.

*[signature]*
Michael Lynch, pro se
Reg. No. A-15561
Hill Corr. Cntr.
P.O. Box 1700
Galesburg, Illinois 61402